

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MURTADHA ALI ALRIKABI,

Petitioner,

v.

CHRISTOPHER J. LAROSE, Warden of
Otay Mesa Detention Center; et al.,

Respondents.

Case No.:  26cv2561 DMS (VET)

**ORDER DENYING PETITION**

This case comes before the Court on the Petition for Writ of Habeas Corpus.  In the Petition, which Petitioner filed pro se, he asserted his continued detention violates the Due Process Clause and *Zadvydas v. Davis*, 533 U.S. 678 (2001).  In response to the Petition, Respondents stated Petitioner failed to set forth sufficient facts to support his claim, he was properly detained under 8 U.S.C. § 1226(c)(1)(B), and he failed to exhaust his administrative remedies.  In the Traverse, which was filed with the assistance of appointed counsel, Petitioner argued he was not required to exhaust administrative remedies, and his continued detention under § 1226(c) was unconstitutional.  For the reasons set out below, the Petition is denied.

Petitioner is a native and citizen of Iraq.  On February 21, 2025, he was transferred to the custody of Immigration and Customs Enforcement ("ICE") after serving a state court

1

26cv2561 DMS (VET)

sentence for receiving stolen property under California Penal Code § 496(d).  Petitioner was placed in removal proceedings and charged with inadmissibility under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his state court conviction.  It appears his removal proceedings are pending, with a hearing before an immigration judge set for July 30, 2026. https://acis.eoir.justice.gov/en/caseInformation.

On August 25, 2025, Petitioner received a bond hearing, and the immigration judge denied bond on the ground Petitioner was a danger to the community.  Petitioner filed an appeal of that decision, which is currently pending before the Board of Immigration Appeals ("BIA").

The parties agree Petitioner is detained under 8 U.S.C. § 1226(c).  Respondents assert this statute mandates detention unless the Attorney General decides release is necessary "'for witness-protection purposes and that the alien will not pose a danger or flight risk.'"  (Return at 4) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). Petitioner responds the statute does not permit perpetual detention without a bond hearing, and that a bond hearing is required if detention becomes prolonged and even if the detainee has already received a bond hearing.

The majority of courts to address claims of prolonged detention under § 1226 agree that although detention under § 1226(c) is mandatory, there are narrow, limited circumstances under which that detention may violate the Due Process Clause.  Support for that position appears to stem from Justice Kennedy's concurring opinion in *Demore v. Kim*, 538 U.S. 510, 532-33 (2003), in which he stated:

> a lawful permanent resident alien … could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.  Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

26cv2561 DMS (VET)

From this statement, courts have developed "a myriad of overlapping balancing tests … to determine whether a petitioner's due process rights under the Fifth Amendment were violated when they were not afforded a bond hearing while detained under § 1226(c)." *Keo v. Warden of the Mesa Verde Ice Processing Center*, No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392, at *5 (E.D. Cal. Apr. 7, 2025). *See, e.g.*, *Maldonado-Romero v. Warden of Imperial Regional Detention Facility*, No. 3:26-cv-02366-RBM-SBC, 2026 WL 1333758, at *3 (S.D. Cal. May 13, 2026) (applying three-factor test from *Lopez v. Garland*, 631 F.Supp.3d 870 (E.D. Cal. 2022)); *Yang v. Chestnut*, No. 1:26-cv-01902-DJC-EFB, 2026 WL 915018, at *3 (E.D. Cal. Apr. 3, 2026) (applying test from *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *7 (W.D. Wash. May 23, 2019)); *Munoz-Gaspar v. Mattos*, No. 2:26-cv-01031-MMD-BNW, 2026 WL 1878727, at *3 (D. Nev. June 30, 2026) (applying test from *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *Singh v. Garland*, No. 5:24-cv-01635-CAS, 2025 WL 1913368, at *6 (C.D. Cal. Apr. 21, 2025) (same); *Diep v. Wofford*, No. 1:24-cv-01238-SKO (HC), 2025 WL 604744, at *4 (E.D. Cal. Feb. 25, 2025) (same); *Doe v. Becerra*, No. 23-cv-05327-RMI, 2024 WL 1018519, at *5-7 (N.D. Cal. Mar. 7, 2024) (same); *Martinez Leiva v. Becerra*, No. 23-cv-02027-CRB, 2023 WL 3688097, at *7 (N.D. Cal. May 26, 2023) (same). At least one other court has rejected those balancing tests in favor of a more straightforward approach that asks "whether Petitioner's continued detention serves the purported immigration purpose and has a definite termination point[.]" *Keo*, 2025 WL 1029392, at *7.

Courts deciding the other issue in this case, namely whether a detainee is entitled to a second bond hearing after another period of prolonged detention, have also applied the *Mathews* test. *See Hernandez v. Bondi*, No. 26-cv-2676-JES-DDL, 2026 WL 1471891, at *2-3 (S.D. Cal. May 26, 2026); *Jemna v. Warden of Otay Mesa Detention Center*, No. 3:26-cv-00725-RBM-VET, 2026 WL 788172, at *4-5 (S.D. Cal. Mar. 20, 2026); *Eliazar G.C. v. Wofford*, No. 1:24-cv-01032-EPG-HC, 2025 WL 711190, at *5 (E.D. Cal. Mar. 5, 2025); *Jensen v. Garland*, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *5-7 (C.D. Cal. May 3, 2023). *But see Ramos v. Mullin*, No. 3:26-cv-01652-RBM-BJW, 2026

WL 898304, at *2 (S.D. Cal. Mar. 30, 2026) (declining "to order another bond hearing, particularly where Petitioner's appeal of the immigration judge's [ ] bond decision is pending.") Given the overlap of these issues in this case, and the parties' failure to set forth the applicable standard, the Court applies the *Mathews* test to Petitioner's prolonged detention claim.

In *Mathews*, the Court set out a list of three "distinct factors" courts should consider in deciding "the specific dictates of due process[:]"

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Here, Petitioner's right to be free from government imprisonment is being affected by his continued detention. In *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), the Supreme Court stated "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Thus, given the gravity of the interest at stake here, the first factor weighs in favor of Petitioner.

Turning to the second factor, there is a low risk of erroneous deprivation of the right to be free from government imprisonment given the circumstances of this case. Petitioner was taken into immigration custody pursuant to 8 U.S.C. § 1226(c)(1)(B), which requires the Attorney General to take custody of any noncitizen who "is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title[.]" Petitioner does not dispute he was properly detained under that statute. He also does not address whether he took advantage of a "*Joseph* hearing", where "he would have been entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category." *Demore*, 538 U.S. at

26cv2561 DMS (VET)

514.[1]  And, although detention under § 1226(c) is mandatory, Petitioner also received a bond hearing and is appealing the immigration judge's decision to deny his request for bond to the BIA.  Petitioner also has the option, after his request for bond was denied, to request a subsequent bond redetermination "in writing," which "shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."  8 C.F.R. § 1003.19(e).  Given the procedures that were available and provided to Petitioner, the second factor weighs in favor of Respondents.

Finally, on the third factor, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal aliens[,]'" and in increasing the chance that noncitizens with valid removal orders are successfully and lawfully removed.  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 528).  Here, § 1226(c) is directed specifically toward furthering the former interest in that it provides for the detention of noncitizens that have been charged with, arrested for, convicted of, or admitted to committing certain deportable crimes.  Thus, this factor, too, weighs in favor of Respondents.

Considering the *Mathews* factors and the parties' arguments, the Court finds Petitioner has not shown he is being detained in violation of his due process rights.  Accordingly, the Petition is denied.  The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated:  July 9, 2026

Hon. Dana M. Sabraw
United States District Judge

---

[1] "This 'Joseph hearing' is immediately provided to a detainee who claims that he is not covered by § 1226(c).  At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention."  *Id.* at 514 n.3.

26cv2561 DMS (VET)